Carey v. West.

---

CAREY et al., *Appellants*, v. WEST et al.

Division Two, May 11, 1897.

1. **Dower:** ADMINISTRATOR'S DEED.  A deed by a public administrator, after the death of the real administrator, who in obedience to an order of the court had sold deceased's lands for debts, but had died after the money was paid but before making a deed, was void.

2. SUBROGATION: VENDEE'S LIEN.  The purchaser of land at an administrator's sale, who pays the purchase money to the administrator, but receives no deed except one from a public administrator many years afterward, is entitled to a lien on the land for the amount of the purchase money in a proceeding to assign the widow's dower therein, when it is shown that the money thus paid went to pay the debts of the deceased, such purchaser being thus subrogated to the rights of the creditors of the estate; but the value of the improvements made by subsequent grantees of such purchaser can not in such a proceeding be ascertained and the amount declared to be a lien on the land which the heirs must pay before they are entitled to have dower assigned.

3. HEIRS: STATUTE OF LIMITATIONS. Where no assignment of dower has been made the statute of limitations does not begin to run against the heirs and in favor of the one claiming the mansion house and messuages under the widow, until after her death. ·

4. Assignment of dower. Prior to the statute of 1889 the doweress might relinquish her dower to the person holding the next estate, but such right was a mere chose in action, and she could not assign the same to strangers until the dower was set off to her. Dower must be assigned according to the statute in force at the time of the husband's death.

5. Administrator's sale: APPROVAL: EVIDENCE. Where there is no formal order approving the sale of lands by an administrator to pay debts of the estate, yet it is sufficient if such approval may be gathered from the whole record.

*Appeal from Greene Circuit Court.*—HON. JAMES T. NEVILLE, Judge.

REVERSED IN PART; AFFIRMED IN PART.

*Geo. Pepperdine* and *Lincoln & Lydy* for appellants.

(1) The widow has the right, until dower is assigned, to occupy and enjoy the mansion house of her husband and the messuages thereto belonging, and can defeat ejectment brought against her. 1 R. S. 1855, sec. 21, p. 672; R. S. 1889, sec. 4533; *Holmes v. Kring*, 93 Mo. 452, *loc. cit.* 458; *Gentry v. Gentry*, 122 Mo. 202. (2) Dower must be assigned according to the law in force at the date of the husband's death (1862) which was before the passage of the homestead act. *Walker v. Deaver*, 79 Mo. 664. (3) No legal or equitable title passed to Sarah M. Harrington under the sale of August, 1866, as to the east three forties, because there was no petition for the sale, no order of publication, and no order of sale of the lands reported sold. *Evans v. Snyder*, 64 Mo. 516; *Greene v. Holt*, 76 Mo. 677, *loc. cit.* 679; *Henry v. McKerlie*, 78 Mo. 416. And the deed was a nullity, being made by a co-administrator to a co-administrator. *Greene v. Holt*, 76 Mo. 677, *loc. cit.* 680. (4) The final settlement and

discharge or Sarah M. O'Day as co-administrator still left the estate in the hands of Hugh Boyd, her co-administrator, who from the records was never discharged. 1 Woerner's Am. Law of Administration, p. 395, sec. 179; *State v. Green*, 65 Mo. 530; *State v. Rucker*, 59 Mo. 24. Hence the appointment of Headlee as administrator *de bonis non* was a nullity. 21 Am. and Eng. Ency. of Law, p. 364, note 3; *Post v. Caulk*, 3 Mo. 35, *loc. cit.* 36; *State v. Green*, 65 Mo. 528; *State v. Rucker*, 59 Mo. 24; 1 Woerner's Am. Law of Adm., pp. 395 and 537, secs. 179 and 247. (5) After the administration was finally settled and the administrator was discharged, the court appointed another administrator *de donis non* to execute to her a deed, which deed was a nullity. *Grayson v. Weddle*, 63 Mo. 523; *Long v. Joplin Mining Co.*, 68 Mo. 422, *loc. cit.* 427. (6) If the administrator sold these forties as he alleges in his report of sale (p. 37), he sold under the order of sale of July term, 1874 (p. 36), which order directs a sale, if made after the beginning of the October term, 1874, to be made at public sale. Having sold contrary to the order such sale passes no title. 2 Woerner's Am. Law of Adm., p. 1055, sec. 477; *Filmore v. Reithman*, 6 Col. 120, 130; *McCully v. Chapman*, 58 Ala. 325; *Fambro v. Gantt*, 12 Ala. 298. (7) The administrator sold more land than was contained in the order of sale of July term, 1874, under which he must have sold if at all, which fact alone voids the entire sale. 2 Woerner's Am. Law of Adm., p. 1056, sec. 477; *Wakefield v. Campbell*, 20 Me. 393, 400; *Litchfield v. Cudworth*, 15 Pick. 23, 32; *Adams v. Morrison*, 4 N. H. 166; *Wells v. Mills*, 22 Texas, 302, 303, *et seq.* (8) It nowhere appears from the probate records that such pretended sale was ever approved by the court; and unless an approval can be gathered from the whole record the sale must be held void. *Jones v. Manly*, 58 Mo. 559; *Henry v. McKer-*

*lie*, 78 Mo. 416; *Moore v. Davis*, 85 Mo. 464; *Camden v. Plain*, 91 Mo. 130. (9) It nowhere appears from the records or the evidence that the purchase price of the east three forties or any part of it, ever was used for the benefit of the estate and hence where the sale is void can not be recovered. 2 Woerner's Am. Law of Adm., pp. 1080 and 1081; *Nowler v. Cort*, 1 Ohio, 236; *Schaefer v. Causey*, 8 Mo. App. 142; *Evans v. Snyder*, 64 Mo. 516; *Mobley v. Nave*, 67 Mo. 546. (10) The widow being in possession under her quarantine right, anything she expended by way of taxes or improvements can not be recovered from the heirs in an action for the assignment of dower, because she can not be said to have made such improvements in good faith, but made them resting in a title which she knew was bad, and could be defeated by the heirs at any time. 1 R. S., sec. 4645. (11) A return of the purchase price and costs of improvements can only be had where they have been expended in good faith for and on account of the land without notice of any frailty in the title, and for valuable consideration, and then only in so far as they have benefited the heirs and improved the land. *Henry v. McKerlie*, 78 Mo. 416, *loc. cit.* 428. (12) The purchaser, under a void sale, being only subrogated to the rights of the creditors whose claims the purchase money paid by him in good faith has extinguished, the rents and profits enjoyed by him must go toward the satisfaction of the claim of such purchaser. 2 Woerner's Am. Law of Adm., pp. 1080, 1081, sec. 485; *Miller v. Palmer*, 55 Miss. 323, 338; *Dougherty v. Adkins*, 81 Mo. 411, *loc. cit.* 416, 417; *Honaker v. Shough*, 55 Mo. 472, *loc. cit.* 475. (13) Where no assignment of dower has been made, the statute of limitations begins to run against the heirs and in favor of one claiming the mansion house and messuages by grant of the widow, from the time of her

death and not before. *Brown v. Moore*, 74 Mo. 633; *Jones v. Manly*, 58 Mo. 559, *loc. cit.* 564; *Holmes v. Kring*, 93 Mo. 452, *loc. cit.* 458; *Agan v. Shannon*, 103 Mo. 661, *loc. cit.* 671; *Null v. Howell*, 111 Mo. 273, *loc. cit.* 278; *Roberts v. Nelson*, 86 Mo. 21, *loc. cit.* 25. (14) The court was not in position to adjust the equities between the parties until dower was assigned to the widow because the most valuable improvements might be located on the land set off to the widow, all of which might be destroyed before her death. (15) The widow stood in the nature of a tenant in common with the heirs, and as such could not purchase an outstanding title or incumbrance and set it up against them; but it is regarded as having been done for the benefit of the heirs as well as herself. *Robinson v. Ware*, 94 Mo. 678; *Hickman v. Link*, 97 Mo. 482; *Allen v. DeGroodt*, 105 Mo. 442.

*Gideon & Gideon, J. M. Patterson* and *J. T. White* for respondents.

(1) Although no title, legal or equitable, passed to Sarah M. Harrington, under the sale of August, 1866, to the east three forties, the report by the administrators shows these three forties were appraised and sold, which report of sale was approved by the probate court at the August term, 1866. She and her grantees have a clear equity for the return of the purchase money, interest and improvements made in good faith. *Henry v. McKerlie*, 78 Mo. 416, *loc. cit.* 428, and authorities cited. (2) In ordering of the estate into Headlee's hands by the probate court, and his appointment, the legal and conclusive presumption in a collateral attack is that the court properly and correctly passed upon the questions presented before appointing him. *Johnson v. Beazely*, 65 Mo. 250;

*Headlee v. Cloud,* 51 Mo. 301; *Brawford v. Wolfe,* 103 Mo. 391; *Macey v. Stark,* 116 Mo. 481. (3) The proceedings of the probate court carry with them the same presumptions as any other court of record, and are not subject to collateral attack, and this doctrine applies to the appointment of Headlee, administrator *de bonis non. Macey v. Stark,* 116 Mo. 481; *Johnson v. Beazley,* 65 Mo. 250; *Brawford v. Wolfe,* 103 Mo. 391; *Rogers v. Johnson,* 125 Mo. 213; *Green v. Tittman,* 124 Mo. 375. (4) The sale of the three west forties was made in strict accordance with the order of sale, but if it were true that the sale took place, as contended for by appellants, at a term of court different from that prescribed by the order of the court, it is not void in a collateral attack. *McVey v. McVey,* 51 Mo. 406; *Murray v. Purdy,* 66 Mo. 606; *Sims v. Gray,* 66 Mo. 613. (4) While there was no formal order of the court approving the report of the sale of the three west forties by Headlee, the appointment of Julian to make a deed, as Headlee, the former public administrator, had died in the meantime, before executing a deed, and the acknowledgment of Julian's deed in open court to defendant Sarah M. West, had the effect of an approval. Headlee made settlement and accounted for $980, the amount of the proceeds of the sale of the land, all of which was consistent with the idea of approval, which may be manifested in a variety of ways. *Grayson v. Weddle,* 63 Mo. 537; *Agan v. Shannon,* 103 Mo. 666. (5) " The approval of the sale by the court need not necessarily appear by formal entry of an order. It is sufficient if the approval can be gathered from the whole record. The equity for title is then complete." *Henry v. McKerlie,* 78 Mo. 416; *Moore v. Davis,* 85 Mo. 464; *Jones v. Manly,* 58 Mo. 559. (6) The report of sale of January 6, 1875, recites that the sale

was made November 1, 1874, when the order of sale was not made until November 13, 1874. This will be presumed by the court to be a clerical mistake. *Price v. Springfield R. E. Investment Co.*, 101 Mo. 107; *Loring v. Groomer*, 110 Mo. 632; *Jones v. Manly*, 58 Mo. 559; *Macey v. Stark*, 116 Mo. 481, 499. (7) The courts look with disfavor upon attempts to overthrow titles at remote periods for trifling irregularities. *Williams v. Mitchell*, 112 Mo. 300; *Burdett v. May*, 100 Mo. 18. (8) Where the administrator has paid the debts in excess of personal assets he will be subrogated to the rights of the creditors and the land may be sold to pay him. 2 Woerner, Am. Law of Adm., sec. 469, p. 1039.

BURGESS, J.—This is a proceeding, under the statute, by three of the daughters and heirs at law of Enoch Harrington, deceased, who died in April, 1862, against his widow, Sarah M. West, his other children and heirs at law, Tobitha Boyd and Wm. Enoch Harrington, and the other defendants, the vendees of Mrs. West, to have the widow's dower assigned in land of which said Enoch Harrington died seized, lying and being in Greene county, Missouri, and upon which was his mansion house at the time of his death, to wit: The southeast quarter of the northeast quarter of section 16, and the northeast quarter of the southeast quarter of section 16, the south one half of the northwest quarter of section 15; the northwest quarter of the southwest quarter of section 15; the southwest quarter of the northeast quarter of section 15; the northwest quarter of the southeast quarter of section 15; and an undivided one third interest in the northeast quarter of the northeast quarter of section 15, all in township 28, of range 23.

The land is located as shown on the following map:

| SECTION 16. | | | | | SECTION 15. | | | |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  | 8 |
|  |  |  | 5 | 4 | 3 | 2 |  |  |
|  |  |  | 6 | 7 |  | 1 |  |  |
|  |  |  |  |  |  |  |  |  |

The forty-acre tracts designated on the plat as 1, 2, and 3, are referred to throughout the record as the three east forties, and those designated as 4, 5, and 7, as the three west forties. The tract designated as number 8 is known as the Newt Moore forty, one third interest of which only is in controversy.

The petition alleges that said deceased left surviving him as his only heirs at law the following named children, to wit: Mary A. Carey, Leila A. Mooneyhan, Coquesa J. Marlin, who have respectively intermarried with their co-plaintiffs Geo. C. Carey, Warren Mooneyhan, and Ezra Marlin; the defendants, Tobitha C. Boyd, who is the wife of defendant Geo. Boyd, and Wm. Enoch Harrington, and the defendant Sarah M. West who was and is the widow of said Enoch Harrington, deceased; that said Sarah M. West, as such widow, was at the date aforesaid and is now entitled to dower in and possession of said mansion house and said messuages thereto belonging, until her dower therein is assigned, admeasured, and set off to her; that her said dower interest has never been assigned and set off to her; that defendant J. Newt. Moore is in possession of said undivided one third interest in the northeast quarter of northeast quarter of said section

15; that said widow is now in possession of said south-west quarter of northeast quarter of said section 15; that defendants Wm. Williams, T. Jeff Sparkman and J. S. Whittaker are in possession of said southeast quarter of northeast quarter and northeast quarter of southeast quarter of said section 16, and said south-west quarter of northwest quarter and northwest quarter of southwest quarter of said section 15; that defendant Wm. D. Sparkman is in possession of said north-west quarter of southeast quarter of said section 15; and defendant Wm. Enoch Harrington is in possession of said southeast quarter of northwest quarter of said section 15, all being in the township and range afore-said; that said last named defendants J. Newt. Moore, Wm. Williams, T. Jeff Sparkman, J. S. Whittaker, Wm. D. Sparkman, and Wm. Enoch Harrington have purchased the interest of said widow in and to the lands aforesaid of which they are in possession, and made such purchases many years after the death of said Enoch Harrington, deceased; that said plaintiff and defendant, children, as the only heirs at law of said Enoch Harrington, deceased, are entitled to said lands and the possession thereof, subject to the said widow's dower therein; that said Tobitha C. Boyd and Geo. Boyd, her husband, and Wm. Enoch Harrington are made defendants herein because they refuse to join as plaintiffs.

The defendants, except Tobitha Boyd, who made default, answered jointly and alleged:

"That the defendants are respectively in posses-sion of the particular tracts of land, described in the petition, as purchasers from Sarah M. West, widow of said Enoch Harrington, and Hugh Boyd who many years ago bought all the right, title, interest, and estate of the said Enoch Harrington, deceased, in and to all of said lands *except the northeast quarter of the southeast*

*quarter of section 16*, township 28, range 23, at the several sales duly made by the administrators of the estate of the said Enoch Harrington, deceased, for the payment of the debts due and owing by the estate of the said Enoch Harrington, deceased, as is more fully set out hereafter in this answer.

"And for another and further answer and defense the defendants say, that at and before the death of the said Enoch Harrington, in said year 1862, he was largely in debt, and owed large sums of money, which said debts, after his death aforesaid, were duly allowed and probated in the probate court within and for said Greene county, Missouri, and that the personal estate being insufficient to pay off and discharge the indebtedness of said estate, the administrators of the estate of the said Enoch Harrington, under the orders of said probate court duly made, proceeded to sell and did sell said lands for the payment of the debts of the estate of the said Enoch Harrington; and that at one of said sales made by Hugh Boyd, administrator of said estate, on the nineteenth day of May, 1866, she, the said Sarah M. West, was the highest and best bidder for, and did purchase the following portion of said lands, viz.: The southwest quarter of the northeast quarter, and the northwest quarter of the southeast quarter, and the southeast quarter of the northwest quarter of section fifteen, township twenty-eight, and range twenty-three, at and for the price and sum of five hundred and forty dollars, being the appraised value and a fair and reasonable price therefor, and that said sale was by said administrator duly reported to said probate court of Greene county, Missouri, ordering said sale, and that said report, sale, proceedings, and doings of said administrator were duly approved by said probate court, and thereupon she, the said Sarah M. West, paid to said Hugh Boyd, administrator of aforesaid, her said

bid of five hundred and forty dollars, and received of said Hugh Boyd, as such administrator, an administrator's deed duly executed, conveying to her all the right, title, interest, and estate as the said Enoch Harrington deceased, of, in and to the aforesaid lands at his death, and she then and there entered into possession of the same in good faith as the owner thereof, under and by virtue of said sale, purchase and deed from the administrator aforesaid.

"That afterward, on the sixth day of November, A. D. 1874, the remaining portion of said land, to wit: The southeast quarter of the northeast quarter of section sixteen, and the northwest quarter of the southwest quarter, and the southwest quarter of the northwest quarter of section fifteen, all in township twenty-eight, of range twenty-three, was duly sold by Elisha Headlee, then public administrator of said Greene county, having in charge the estate of the said Enoch Harrington, deceased, under an order of the said probate court of said Greene county, Missouri, for the payment of the remaining debts due and owing by said estate, and that at such sale, the said widow, the said Sarah M. West, was the highest and best bidder for said real estate, and the same was duly sold to her at and for the price and sum of nine hundred and eighty dollars, the same being the duly appraised value thereof, by the said Elisha Headlee, public administrator as aforesaid, and which sale was then duly reported by him to the said probate court of Greene county, Missouri, ordering the same, and was by said court duly approved, and that she, the said Sarah M. West, paid to the said Elisha Headlee, administrator as aforesaid, on the first day of January, A. D. 1875, her said bid of nine hundred and eighty dollars, and received from his successor in office, S. H. Julian, public administrator of said Greene county, an admin-

istrator's deed, duly executed, conveying to the said Sarah M. West all the right, title, interest and estate of the said Enoch Harrington, of, in and to said lands at the time of his death, and that she then and there entered into possession of the said lands in good faith as the owner thereof under such sale, purchase and administrators' deed.

"And at another sale made by the administrators of said estate on the —— day of August, A. D. 1866, Hugh Boyd was the highest and best bidder, and did purchase the following portion of said land to wit: The undivided one third part of the northeast quarter of the northeast quarter of section sixteen, township twenty-eight, range twenty-three, at and for the price and sum of $46.66, being the appraised and a fair and reasonable price therefor, and that said sale was by said administrators duly reported to said probate court of said Greene county, Missouri, ordering said. sale, and that said report, sale and proceedings of said administrators were duly approved by said probate court, and thereupon the said Hugh Boyd paid the said administrators his said bid of $46.66, and received of said administrators an administrator's deed, duly executed, conveying to him all the right, title, interest and estate of the said Enoch Harrington deceased in and to said premises at his death, and then and there entered into the possession of the. same in good faith as the owner under said sale, purchase and deed from said administrators.

"And that the defendant, Sarah M. West, sold the following portion of said land, to wit: The southeast quarter of the northwest quarter of section fifteen, now owned by William Enoch Harrington, to his grantors. That she sold the northwest quarter of the southeast quarter of section fifteen, now owned by William D. Sparkman, to his grantors. That she sold

the following described portion of said land, to wit: the southwest quarter of the northeast quarter of said section fifteen, on the thirtieth day of April, 1880, to T. J. Branson, and the said T. J. Branson sold said last above described land to R. C. Longworth November 12, 1881, and the said Longworth, for a valuable consideration, to wit, eight hundred dollars, sold the last described premises back to said Sarah M. West, on January 11, 1893, who is now the owner and in possession of the same.

"And the said Sarah M. West, for a valuable consideration, to wit, twenty-four hundred dollars, sold the following portion of said lands, to wit, southeast quarter of the northeast quarter of section sixteen, and southwest quarter of the northwest quarter of section fifteen, and northwest quarter of the southwest quarter of said section fifteen, to J. S. Whittaker, on the eleventh day of July, 1893, who afterward sold an undivided two thirds interest therein, to T. Jeff Sparkman and William Williams, who are now the owners of and in possession of the same; and that prior to the institution of this suit the defendants J. S. Whittaker, Wm. Williams and T. Jeff Sparkman, bought the undivided interest of Lelia A. Mooneyhan and husband, plaintiffs herein, and Wm. E. Harrington and Tobitha Boyd and her husband, defendants herein, in the northeast quarter of the southeast quarter of section sixteen, township twenty-eight, range twenty-three, being three fifths interest for the price of $480, and disclaim any interest in the other undivided two fifths thereof, and the other defendants disclaim any interest whatever in said last described forty-acre tract.

"And the said Hugh Boyd sold the following described portion of said lands, to wit: the undivided one third interest in the northeast quarter of the north-

east quarter of said section fifteen, which said land is now owned and occupied by J. Newt Moore, to the grantors of said Moore.

"All of the deeds made and conveying the real estate aforesaid being warranty deeds in the usual form, and containing the ordinary and usual covenants of warranty.

"And the said Sarah M. West and Hugh Boyd, believing that they had a good and indefeasible estate in fee simple in said lands, and the legal title thereto, conveyed the same as aforesaid to the parties aforesaid, who went into possession of the same in good faith; but if the court finds and believes from the evidence in the case that the said Sarah M. West and Hugh Boyd or either of them failed to receive the legal title to said lands under the administrator's deeds aforesaid, the defendants pray the court to divest the title out of the said heirs of Enoch Harrington, deceased, by proper decree and vest the title in the defendants Sarah M. West, Wm. Enoch Harrington, William Williams, T. Jeff Sparkman, Wm. D. Sparkman, J. Newt. Moore and J. S. Whittaker, to the respective tracts of land now owned and occupied by them, as above set forth, and for such other and further relief as to the court shall seem meet.

"And for another and further answer and defense to plaintiff's petition, defendants say that Enoch Harrington, deceased, was in debt and owed large sums of money at the time of his death in the said year 1862, which said debts, after his death as aforesaid, were allowed and probated in the probate court of said Greene county, Mo., while his said estate was in process of administration, and the personal estate being insufficient to pay off and discharge the debts of the said estate, the several administrators of the estate of the said Enoch Harrington, deceased, under the orders of

said probate court duly sold said lands in plaintiff's petition described, for the payment of the debts of said estate then owing and unpaid. And that at one of said sales so made by Hugh Boyd, administrator of said estate, on the —— day of August, 1866, the said Sarah M. West was the highest and best bidder for, and did purchase the following described portions of said land, viz., the southwest quarter of the northeast quarter, and the northwest quarter of the southeast quarter, and the southeast quarter of the northwest quarter of section 15, at and for the price of $540, the same being the appraised and reasonable price therefor, and that said Sarah M. West then and there paid said sum of $540 to said Hugh Boyd as administrator aforesaid, as the purchase money for said lands, and that said sale was by said administrator duly reported to the probate court of said Greene county, Missouri, ordering said sale, and that such report, sale and proceedings of said administrators were duly approved by said court, and thereupon on the 23d day of August, 1866, she paid the said administrator her said bid of $540, and received of the said administrator an administrator's deed, duly executed, conveying to her all the right, title, interest and estate of the said Enoch Harrington, deceased, of, in, and to the aforesaid lands at the time of his death, and she entered into possession of the same under said sale, purchase and deed, in good faith, in the belief that she was the owner of the same.

"And that afterward, to wit, on the 1st day of November, 1874, the remaining portion of said lands, as hereinafter described, was duly sold by Elisha Headlee, then public administrator of said Greene county, having in charge the estate of the said Enoch Harrington, deceased, under an order of the probate court of said Greene county, for the payment of the remaining debts due and owing by said estate, described as

follows, viz., the southeast quarter of the northeast quarter of section 16, and the northwest quarter of the southwest quarter and the southwest quarter of the northwest quarter of section 15, all in township 28, range 23.

"And that at said sale the defendant, the said widow, Sarah M. West, was the highest and best bidder for said real estate, and the same was sold to her at and for the price of $980, the appraised value thereof, by said Elisha Headlee, administrator as aforesaid, and which sale was by him duly reported to the probate court of said Greene county, Missouri, ordering the same, and by said court duly approved, and that thereupon, on the 6th day of January, 1875, she paid to the said Elisha Headlee, administrator as aforesaid, her said bid of $980, and thereafter received from his successor in office, S. H. Julian, public administrator, an administrator's deed duly executed, purporting to convey to the said Sarah M. West all the right, title, interest and estate of the said Enoch Harrington, deceased, of, in and to the said lands at the time of his death. And that she entered into the possession of said lands in good faith, as the owner under such sale, purchase and administrator's deed.

"And at another sale made by the administrator of said estate, on the ―― day of August, 1866, Hugh Boyd was the highest and best bidder for, and did purchase the following portion of said lands, to wit, an undivided one third part of the northeast quarter of the northeast quarter of section 15, at and for the price of $46.66, being the appraised and a fair and reasonable price therefor, and that said sale was by said administrators duly reported to said probate court of Greene county, Missouri, ordering said sale, and said report, sale and proceedings of said administrators

were duly approved by said court, and thereupon the said Hugh Boyd paid the said administrators his said bid of $46.66 and received of said administrator an administrator's deed, duly executed, conveying to him all the right, title, interest and estate of the said Enoch Harrington, deceased, in and to said premises at his death, and then and there entered into possession of the same in good faith as the owner under said sale, purchase and administrator's deed.

"And that the defendant, said Sarah M. West, sold the following portion of said land, to wit, the southeast quarter of the northwest quarter of section 15, now owned by Wm. Enoch Harrington, to the grantors of the said Wm. Enoch Harrington.

"And the said Sarah M. West, for a valuable consideration, sold the following described portion of said land, to. wit, the northwest quarter of the southeast quarter of section, township and range aforesaid, now owned by Wm. D. Sparkman, to the grantors of the said Wm. D. Sparkman.

"And the said Sarah M. West, for a valuable consideration, sold the following portion of said land, to wit, the southwest quarter of the northeast quarter of section, township and range aforesaid, on the 30th day of April, 1880, to T. J. Branson, and the said Branson, for a good and valuable consideration, sold said last above described land to R. C. Longworth, on November 12th, 1881, and the said Longworth, for a valuable consideration, to wit, $800, sold said last described premises back to said Sarah M. West on January 11, 1893, who is now the owner and in possession of the same.

"And the said Sarah M. West, for a valuable consideration, to wit, $2,400, sold the following portion of said lands, to wit, the southeast quarter of the northeast quarter of section 16, and the southwest quarter of

the northwest quarter of section 16, and the northwest quarter of the southwest quarter of section 15, township and range aforesaid, to J. S. Whittaker, on the eleventh day of July, 1893, who afterward sold, for a valuable consideration, an undivided two thirds interest therein to T. Jeff Sparkman and Wm. Williams, who are now owners of and in possession of the same.

"And the said Hugh Boyd, for a valuable consideration, sold the following portion of said lands, to wit, an undivided one third interest in the northeast quarter of the northeast quarter of said section 15, to the grantors of said J. Newt. Moore, who is now the owner and in possession of the same.

"All of the deeds so made as aforesaid, so conveying the real estate aforesaid, being warranty deeds in the usual form, and containing the ordinary and usual covenants of warranty.

"And the said Sarah M. West and Hugh Boyd, believing that they each had acquired a good and legal title to said lands, conveyed the same to the parties aforesaid, who, so believing, went into the possession of the same in good faith, and that the defendants, so believing, and in good faith, have made valuable, needed and permanent improvements on said premises by building dwelling houses, stables, cribs, granaries, etc., of the value of fifteen hundred dollars, and by clearing, fencing and putting in a good state of cultivation on said premises fifty acres of land reasonably worth five hundred dollars, and have paid the taxes on all of said land from said year 1866 down to the present time, amounting in the aggregate to seven hundred and fifty dollars.

"Wherefore, if the court should find and believe from the evidence that no title, legal or equitable, passed to said Sarah M. West and Hugh Boyd, or either of them, under the said sales, purchases and adminis-

trator's deeds aforesaid, and that they passed and conveyed no title to their grantees herein to said lands, defendants pray the court for return of the amount of the purchase money aforesaid, paid at such purchases by the defendants, said Sarah M. West and Hugh Boyd as aforesaid, together with interest thereon at six per cent per annum from the date of said payments, and for their reimbursements, for the money and labor expended in making the improvements aforesaid, and for payment of the taxes aforesaid, with interest thereon, and that an accounting thereof be taken, and that the sum found to be due the defendants therefor be declared and decreed to be a lien upon the said lands, and for such other and further relief as the court shall deem just and proper.

"And the defendants for further answer say that the cause of action in the petition mentioned did not accrue within twenty-four years before the commencement of this action.

"And the defendants for further answer say that the cause of action in the petition mentioned did not accrue within ten years before the commencement of this action.

"And defendants for further answer say that plaintiffs ought not to have and maintain their said cause of action because the same was not commenced within three years from the twenty-fourth day of August, A. D. 1889."

Plaintiffs made reply to the answer of defendants in which they deny all affirmative allegations therein contained, except they admit that Mooneyhan, Boyd and Harrington sold their interest in the northeast quarter of the southeast quarter of section 16.

The reply then alleges that all the land in question which Mrs. West claims to have purchased was obtained by her by fraud; and that after the administra-

tion of the estate had been finally settled and closed, she falsely and fraudulently procured an order of the probate court in said county, ordering said estate in the hands of S. H. Julian, the then public administrator of said county, for the sole purpose of executing a deed to her for a part of the land in question, which she falsely and fraudulently represented to have purchased from Elisha Headlee, a former public administrator, in and for said county, who was at the time of her said pretended purchase in charge of the estate.

The court rendered the following decree:

"Now at this day this cause coming on for final hearing, and the plaintiffs and defendants, except Tobitha C. Boyd and George Boyd, her husband, who make default, appear by their respective attorneys, and the trial of the issues involved in this cause are submitted to the court for hearing and final determination, and the court, after hearing the evidence and being fully advised of and concerning the premises, doth find the issues in favor of the defendants, Sarah M. West, William Enoch Harrington, William Williams, T. Jeff. Sparkman, William D. Sparkman, J. Newt. Moore, and J. S. Whittaker; and the court doth further find from the pleadings and evidence in this case that this is an action by the only children and heirs of Enoch Harrington, deceased, to assign, set off and admeasure dower to the defendant, Sarah M. West, who is the widow of said Enoch Harrington, deceased, and her co-defendants, T. Jeff. Sparkman, Wm. Williams, Wm. D. Sparkman, Wm. Enoch Harrington, J. Newt. Moore and J. S. Whittaker, who are the grantees of and claim under the said Sarah M. West, widow of said Enoch Harrington, in and to the following real estate, situate in Greene county, Missouri: The undivided one third interest in the northeast quarter of northeast quarter of section 15, township 28, of range 23, now

owned by the defendant, J. Newt. Moore; and the southwest quarter of the northeast quarter of section 15, township 28, of range 23, now claimed by the defendant, Sarah M. West, and the southeast quarter of the northwest quarter of section 15, township 28, of range 23, now claimed by the defendant, William Enoch Harrington; and the northwest quarter of the southeast quarter of section 15, township 28, of range 23, now claimed by Wm. D. Sparkman; and the southwest quarter of the northwest quarter, and the northwest quarter of the southwest quarter of section 15, and the southwest quarter of the northeast quarter of section 16, township 28, of range 23, now owned by the defendants, T. Jeff. Sparkman, Wm. Williams and J. S. Whittaker; and the northeast quarter of the southeast quarter of section sixteen, township twenty-eight, of range twenty-three, in which the defendants, T. Jeff. Sparkman, William Williams and J. S. Whittaker, have bought the interest of plaintiff, Leila A. Mooneyhan and Warren Mooneyhan, her husband, and the defendants, William Enoch Harrington and Tobitha C. Boyd and George Boyd, her husband, of which the said Enoch Harrington died seized and possessed in Greene county, Missouri, on the twenty-ninth day of April, A. D. 1862, in fee simple.

"And the court doth further find from the evidence that the said defendants, Sarah M. West and Hugh Boyd, bought all said real estate, except the northeast quarter of the southeast quarter of section 16, township 28, of range 23, at the several sales made by the administrator of the estate of the said Enoch Harrington, deceased, to pay the debts due and owing by the estate of the said Enoch Harrington for want of sufficient personal assets to pay the same, and that at one of said sales made by Elisha Headlee, public administrator of Greene county, Missouri, being in charge

of the estate of Enoch Harrington, deceased, on the sixth day of November, A. D. 1874, the defendant, Sarah M. West, became the purchaser of the following portion of said real estate, viz., the southwest quarter of the northwest quarter, and the northwest quarter of the southwest quarter of section 15, and the southeast quarter of the northeast quarter of section 16, all in township 28, of range 23, now owned by the defendants, T. Jeff. Sparkman, Wm. Williams and J. S. Whittaker, as the grantees of said defendant, Sarah M. West, at and for the price and sum of $980, being the appraised value of the same, and on the first day of January, 1875, the said Sarah M. West paid to the said Elisha Headlee her said bid of $980, and in all things on her part complied with the terms of said sale and purchase, which sale was reported by the said Elisha Headlee to the probate court of Greene county, Missouri, ordering the same at the next term after said sale and the same was by said court approved, but failed to receive from said Elisha Headlee, public administrator as aforesaid, or his successor in office, S. H. Julian, an administrator's deed *conveying* to her, the said Sarah M. West, the legal title and estate of the said Enoch Harrington at the time of his death in and to the lands so bought by her as aforesaid.

"Wherefore, from all the evidence in this case, it appears to the court that the plaintiffs and heirs at law of the said Enoch Harrington are not entitled to recover or have dower assigned to said Sarah M. West or her grantees, T. Jeff. Sparkman, Wm. Williams and J. S. Whittaker in and to the lands last aforesaid, but that the said T. Jeff. Sparkman, Wm. Williams and J. S. Whittaker, as the grantees of said Sarah M. West, are entitled to the legal title and estate of the said Enoch Harrington, deceased, at the time of his death, on April 29, 1862.

"It is therefore considered, ordered, adjudged and decreed by the court that all the right, title, interest and estate of the said Mary A. Carey and George C. Carey, her husband, Leila A. Mooneyhan and Warren Mooneyhan her husband, Coquesa J. Martin and Ezra Martin her husband, Tobitha C. Boyd and George Boyd her husband, and Wm. Enoch Harrington, as children and heirs of said Enoch Harrington, deceased, of, in and to the southwest quarter of the northwest quarter, and the northwest quarter of the southwest quarter of section 15, and the southeast quarter of the northeast quarter of section 16, township 28, of range 23, be, and the same is hereby divested out of them and the title thereto firmly vested in the defendants, T. Jeff. Sparkman, Wm. Williams, and J. S. Whittaker, their heirs and assigns, in fee simple, forever, and that they recover of and from the plaintiffs their costs laid out and expended in this behalf.

"And the court doth further find from the evidence in this case that at another sale made by Sarah M. West, one of the administrators of the estate of the said Enoch Harrington, deceased, on the nineteenth day of May, 1866, Hugh Boyd became the purchaser of the following portion of said real estate, to wit: An undivided one third interest of, in and to the northeast quarter of the northeast quarter of section 15, township 28, of range 23, now owned by the defendant, J. Newt. Moore, as the grantee of said Hugh Boyd, at and for the price and sum of $46.66, being the appraised value of the same, and thereupon the said Hugh Boyd paid his said bid and in all things complied with the terms of said sale and purchase on his part, which sale was reported by the said Sarah M. West to the probate court of Greene county, Missouri, ordering the same, at the next term after sale was by said court approved, but failed to receive from the said

Sarah M. West, one of the administrators of the estate of Enoch Harrington, deceased, an administrator's deed sufficient to convey the legal title and estate of the said Enoch Harrington, deceased, at the time of his death, to him, the said Hugh Boyd, purchaser of aforesaid.

"Wherefore, from all the evidence in the case it appears to the court that the plaintiffs and heirs at law of Enoch Harrington are not entitled to recover or have dower assigned to the said defendant, J. Newt. Moore, grantee of the said Hugh Boyd in and to the land last aforesaid, but that the said J. Newt. Moore, as the grantee of the said Hugh Boyd, is entitled to the legal title and estate of the said Enoch Harrington at the time of his death on April 29, 1862.

"It is therefore considered, ordered, adjudged and decreed by the court that all the right, title, interest and estate of the said Mary A. Carey and Georgia C. Carey her husband, Leila A. Mooneyhan and Warren Mooneyhan her husband, Coquesa J. Martin and Ezra Martin her husband, Tobitha Boyd and Georgia Boyd her husband, and Wm. Enoch Harrington, as children and heirs of Enoch Harrington, of, in and to the undivided one third part of the northeast quarter of the northeast quarter of section 15, township 28, of range 23, be and the same is hereby divested out of them and the title thereof firmly vested in the defendant, J. Newt. Moore, his heirs and assigns, in fee simple, forever, and that he recover of the plaintiffs his costs laid out and expended in his behalf.

"And the court doth further find from the evidence in this case that at one of said sales made by Hugh Boyd, one of the administrators of the estate of the said Enoch Harrington, deceased, on the nineteenth day of May, 1896, the defendant, Sarah M. West, became the purchaser of the following portion

of said real estate, to wit, the northwest quarter of the southeast quarter of section 15, township 28, range 23, now claimed by defendant, Wm. D. Sparkman, as the grantee of said Sarah M. West, and the southeast quarter of the northwest quarter of section 15, township 28, of range 23, now claimed by the defendant, Wm. Enoch Harrington, as the grantee of said Sarah M. West, and the southwest quarter of the northeast quarter of section 15, township 28, range 23, now claimed by defendant, Sarah M. West, who sold the same to T. J. Branson on April 30, 1880, and bought the same back on January 11, 1893, of R. C. Longworth, grantee of the said T. J. Branson, at and for the price and sum of $540, being the appraised value of the same; and afterward, on the twenty-third day of August, 1866, the said Sarah M. West paid the said Hugh Boyd, administrator, as aforesaid, to the probate court of Greene county, Missouri, ordering the same, at the next term after said sale, and said report was by said court approved, but that the said Sarah M. West failed to receive from the said Hugh Boyd, administrator aforesaid, an administrator's deed conveying the legal title and estate of Enoch Harrington at the time of his death, April 29, 1862, or any other title on account of irregularities in the proceedings of the probate court and for want of a sufficient deed.

"Wherefore, it is considered, decreed and adjudged by the court that dower be set off, admeasured and assigned to the defendant, Sarah M. West, and her grantees, Wm. Enoch Harrington and Wm. D. Sparkman, in and to the said southwest quarter of the northeast quarter, and the southeast quarter of the northwest quarter, and the northwest quarter of the southeast quarter of section 15, township 28, range 23; and to the said defendant, Sarah M. West, in and to the northeast quarter of the southeast quarter of sec-

tion sixteen, township twenty eight, of range twenty-three, upon the payment by the plaintiffs and heirs of Enoch Harrington, deceased, on or before the third day of the May term, 1894, of this court to the said Sarah M. West, Wm. Enoch Harrington and Wm. D. Sparkman, the sum of $600 each on each of the forty acres so claimed by them to reimburse them, the said Sarah M. West, Wm. Enoch Harrington and Wm. D. Sparkman, for the purchase money so paid for said land and interest thereon, and improvements made on said lands by the respective claimants which the court finds were made by the respective claimants in good faith in the belief that they had a good title to the land severally held by them.

"Wherefore, it is considered, adjudged and decreed by the court that a lien of $600 be declared in favor of the said defendant, Sarah M. West, on the southwest quarter of the northeast quarter of section 15, and that a lien of $600 be declared in favor of the defendant Wm. Enoch Harrington on the southwest quarter of the northwest quarter of section 15, and that a lien be declared in favor of Wm. D. Sparkman on the northwest quarter of the southeast quarter of section 12, all in township 28, range 23, as aforesaid, and that in default of the payment of said sums to the said parties on or before the third day of the next term of this court, A. D. 1894, it is ordered, decreed and adjudged by the court, that the said real estate, viz., the southwest quarter of the northeast quarter, and the southeast quarter of the northwest quarter, and the northwest quarter of the southeast quarter of section 15, all in township 28, range 23, be sold to pay the said sums of money due on them, and costs, and that execution issue therefor."

Plaintiffs then filed their motion for a new trial, which, being overruled, they appealed.

The widow, Mrs. Harrington, now Mrs. West, and Hugh Boyd were appointed and qualified as administratrix and administrator of the estate. The estate was considerably in debt, and the personal effects insufficient to pay the debts, so that it became necessary to sell a part of the real estate to pay the demands against it.

On December 8, 1865, the administrators presented a petition to the probate court for an order of sale of real estate belonging to the estate to pay debts. An order of sale was made as petitioned for, and a sale subsequently made by the administrators, which included lots 1, 2 and 3, as numbered on the map; in other words, the three east forties. At this sale Mrs. West became the purchaser of said lots at the price of $540, but her co-administrator Boyd made her a deed therefor, instead of the clerk of the county court, as the law required.

The petition for and order of sale did not properly describe the land. The appraisement, however, and the report of sale, which was duly approved, properly described it, as did also the deed made by the administrator to the purchaser.

The sale of the one third interest in the northeast quarter of the northeast quarter of section 15, numbered 8 on the plat, seems to have been regular.

The proceeds arising from the sale of the land, as before stated, proved to be insufficient to pay the demands against the estate, so in January, 1873, Elisha Headlee, public administrator of Greene county, who was then in charge of the estate, presented a petition to the probate court of said county for a sale of the three west forties which are designated on the plat as numbers 4, 5 and 7. Orders of publication of the intended application for an order for said sale were properly made, as well also as the order of sale, prop-

erty duly appraised, sale made and reported, and deed made to Sarah M. O'Day (formerly West) who became the purchaser at the appraised value of $980, which was paid by her to the administrator.

This sale was not however made upon the first order. No sale was made under the first order of sale, but renewed orders of sale were made from term to term of the probate court until the October term, 1874, when the order of sale was again renewed and the sale made in pursuance thereof. In these orders one of the tracts, to wit: the southeast quarter of the northeast quarter of section 16 (number five on the plat), was omitted until the last order under which the sale was had, although it was in the first order.

In the report of the sale by the public administrator the sale is stated to have been made on the first day of November, 1874, while the order of sale appears to have been made on the thirteenth day of that month. But the report shows that the sale was made in pursuance of an order made at the October term, 1874, and the only order made at that term was that of November 13. That this was a clerical error is manifest from the fact that the sale was reported January 6, 1875, so that it is fair to presume that the sale was made on the first day of December, 1874, instead of on the first day of November of that year, as stated in the report.

This sale was never approved by an order of court. The purchase money, however, was paid to the administrator, Headlee, who died before making a deed to the purchaser for the land, and thereafter she presented her petition to said court asking that an administrator be appointed for the purpose of making her a deed. In compliance with the petition the court appointed one S. H. Julian, administrator, who executed to her a deed for the land. It is admitted by defendants that

Julian had no power to make the deed under the circumstances, and that it is void.

All of the purchase money arising from the sales of the land seems to have been applied toward the payment of demands against the estate.

Evidence was introduced by defendants, over the objections and exceptions of plaintiffs, showing the extent and value of the improvements put upon the different forty-acre tracts of the land by the respective owners and those under whom they claim title.

There can be no question as to the right of the widow until her dower is assigned, to occupy and enjoy the mansion house of her husband and the messuages thereto belonging. 1 R. S. 1855, p. 672, sec. 21; R. S. 1889, sec. 4533. *Holmes v. Kring*, 93 Mo. 452; *Gentry v. Gentry*, 122 Mo. 202; *Melton v. Fitch*, 125 Mo. 281. And as dower becomes consummate upon the death of the husband, as distinguished from inchoate before his death, it must be assigned according to the statute in force at the time of the husband's death. *Walker v. Deaver*, 79 Mo. 664.

While it is conceded by defendants that no legal title passed to Mrs. Harrington to lots 1, 2, and 3, in other words, the three east forties, under the administrator's sale of August, 1866, it is insisted that as the report by the administrator of that sale shows that these forties were appraised and sold, and that said report was approved by the probate court at its August term, 1866, she and her grantees are equitably entitled to have the purchase money with interest returned, and compensation for all improvements made in good faith, before plaintiffs are entitled to have her dower in these tracts set off. Plaintiffs' contention is that the sale as to these lots was void, and that no title either legal or equitable passed to Mrs. Harrington by reason of her purchase.

It is upon the ground that the sale was void and passed no title either legal or equitable that the purchaser Mrs. Harrington is in equity entitled to the return of the purchase money with interest, and that she is entitled to have the purchase money and interest returned to her, and that her vendees are entitled to reimbursement for benefits to the land by way of improvements which have enhanced its value. *Henry v. McKerlie*, 78 Mo. 416. The purchase money which was paid by Mrs. Harrington was of her own means, and as it went to the extinguishment of the demands against the estate, it is but right and just that she should be subrogated to the rights of the creditors to that extent, but we know of no rule of law which authorizes the ascertainment of the value of improvements made upon the land by her codefendants, and making the payment thereof and of the purchase money a condition precedent to the admeasurement of the widow's dower, or which would justify making the amount allowed for improvements a lien upon the land in an action of this character.

Mrs. West's vendees have no interest whatever in the purchase money paid by her for the land, nor has she in the compensation to which they may be entitled for improvements.

The parties entitled to compensation for improvements may have such matters adjusted before plaintiffs are permitted to take possession of the land, if it should be judicially determined that they are entitled to such possession, but payment for the improvements can not be made a condition precedent to plaintiff's right to have the dower assigned. Such right is clearly subordinate to the right of plaintiffs to have the widow's dower set off. But it is not so with regard to the purchase money paid for the land by Mrs. Harrington that went to the extinguishment of the demands against

the estate, which for that reason, in equity and good conscience, entitles her to be subrogated to the rights of the creditors, and to have the payment of the money thus paid made a condition precedent in the judgment for the admeasurement of her dower.

If the east forties were sold in a body, or for one price, then the amount of the purchase money should be prorated according to the value of each forty at the time of the sale at which she purchased, but if sold separately then the payment of the amount paid for each forty should be made a condition precedent for the assignment of dower in such tract.

It is also claimed by defendants that plaintiffs' right of action is barred by the statutes of limitations, but it has been uniformly held by this court, in cases where no assignment of dower has been made, the statute of limitations does not begin to run against the heirs and in favor of one claiming the mansion house and messuages under the widow, until after her death. *Brown v. Moore*, 74 Mo. 633; *Jones v. Manly*, 58 Mo. 559; *Holmes v. Kring*, 93 Mo. 452; *Agan v. Shannon*, 103 Mo. 661; *Null v. Howell*, 111 Mo. 273; *Roberts v. Nelson*, 86 Mo. 21; *Melton v. Fitch*, 125 Mo. 281.

By section 21, page 672, Revised Statutes 1855, the same being in force when Enoch Harrington died, it is provided that, "until dower be assigned, the widow may remain in and enjoy the mansion house of her husband, and the messuages or plantation thereto belonging, without being liable to pay any rent for the same."

At common law the widow may remain in the family mansion of her husband for forty days after her husband's death, but it will be seen from the statute quoted that this right has been extended in this State to messuages or plantation belonging to the mansion house and also until the widow's dower is assigned;

and plaintiffs could not at any time have successfully prosecuted ejectment against the widow or anyone holding under her, and to whom she had transferred this possessory right until after such assignment had been made. This right was assignable and passed to the vendees of Mrs. Harrington by virtue of the deeds made by her to them. *Jones v. Manly, supra; Melton v. Fitch, supra.*

While the doweress might relinquish her right to dower to the person holding the next estate, such right is a mere chose in action, and she could not, prior to 1889 (R. S. 1889, sec. 4514) sell and assign the same until dower was set off. *Waller v. Mardus,* 29 Mo. 25.

While the court ruled that plaintiffs were entitled to have the widow's dower admeasured in the three east forties, and also in the northeast quarter of the southeast quarter of section 16, in township 28, of range 23, in regard to the correctness of which with respect to the last named tract no question is made, it made as a condition precedent to such admeasurement the payment by plaintiffs to defendants on or before the third day of the May term, 1894, of the circuit court of said county, the sum of $600 on each of said forty acre tracts, for reimbursement for the purchase money and interest paid by Mrs. Harrington, and for improvements made by the respective parties on the different tracts of which they are in possession, and decreed the same to be a lien upon the land, and if not paid on or before the next term of said court that plaintiffs' interest in the same be sold, etc., and in so doing, for reasons already stated, committed manifest error.

There was no formal order of the court approving the sale of the three west forties by Headlee, administrator, but it is contended by counsel for defendants

that this was not absolutely necessary, and that it is sufficient if such an approval can be gathered from the whole record, which being shown the defendants, Sparkman, Williams, and Whittaker, are entitled to a decree against plaintiffs for title. This is the rule announced in a number of cases, to wit: *Jones v. Manly, supra; Grayson v. Weddle,* 63 Mo. 523; *Long v. Joplin Mining & Smelting Co.,* 68 Mo. 422; *Gilbert v. Cooksey,* 69 Mo. 42; *Henry v. McKerlie,* 78 Mo. 416.

With respect to these forties the court found that Mrs. West became the purchaser at administrator's sale, at the price of $980, which was their appraised value, and that on the first day of January, 1875, she paid to the then administrator Headlee the amount of her bid, and complied with the terms of the sale on her part; that the sale was reported by said Headlee to the probate court according to law, and the report approved, but that Headlee failed to make her a deed, etc. And that the defendants Sparkman, Williams, and Whittaker had acquired the title thereto through Mrs. West for a valuable consideration in good faith, and are now in the possession of the land.

These findings are, we think, justified by the facts disclosed by the record of the probate court that is in evidence, which, however, is in such a chaotic condition that it is next to impossible to determine from it what the real facts in the case are, and we must, under the circumstances, defer in a large measure to the finding of the court below.

It is, however, clearly shown by that record that the administrator received the purchase money for the land, and that it was charged to him in his settlement, and under such circumstances it has been said: "It would be absurd to suppose that the court would allow the administrator to receive the purchase money and charge him with it in his settlement if it had not pre-

viously sanctioned the sale. Besides, if the report of the same was not approved, some action of the court must have followed providing for a resale, but no such action occurred; but all the subsequent proceedings of the court were based on the assumption that it had already approved the sale as reported." *Grayson v. Weddle*, 63 Mo. 523.

Our conclusion is that the court did not err in its decree with respect to these forties.

No question is raised with respect to the sale of lot 8; or the Stone county land.

It follows from what has been said that the judgment in regard to the three east forties, and the northeast quarter of the southeast quarter of section 16, township 28, range 23, is reversed and remanded, and in all other respects and as to all the other land in question it is affirmed. GANTT, P. J., and SHERWOOD, J., concur.